FALCON CONSTRUCTION COMPANY,
Plaintiff-Cross-Defendant-Appellant,

v.

ECONOMY FORMS CORPORATION,
Defendant-Cross-Plaintiff-Appellee.

No. 85-2778
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1986.

---

Tom Alexander, Houston, Tex., for plaintiff-cross-defendant-appellant.

William J. Koehn, Des Moines, Iowa, Robert M. Corn, Houston, Tex., for defendant-cross-plaintiff-appellee.

Before RUBIN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A construction company, which appeals from a district court judgment awarding damages and attorneys' fees for breach of contract to a materialman who furnished it with supplies, contends that the district court judgment should be reversed because the court did not give careful, independent consideration to the record before it, but merely adopted the materialman's proposed findings. Although the district court did little more than sign proposed findings and its actions do not demonstrate that it conducted a significant, independent evaluation of the record, the construction company has furnished us no reason to conclude that the findings are clearly erroneous and lack evidentiary support. We do, however, amend that court's judgment to correct mathematical and clerical errors committed by counsel for the materialman and adopted by the court, and we remand the matter so that the trial court may set forth its bases for determining the amount of attorneys' fees it awarded.

## I.

Falcon Construction Company, under a subcontract with Williams Brothers Construction Company, a general contractor, constructed the mainspan of the Houston Ship Channel Toll Bridge. The project required construction of four pier shafts made of concrete cast-in-place to support a superstructure and the roadway of the bridge. Each of the twenty-seven-feet-high piers was to be constructed in six lifts. Falcon subsequently entered into a contract with Economy Forms Company ("EFCO") to lease concrete forms and pur-

chase other materials necessary to build the piers. They agreed that EFCO would lease to Falcon one set of forms at $250 per day. The parties contemplated that, if everything ran according to plan, each segment would take ten days to complete, or a total of 240 days for all twenty-four lifts. Because, however, it was anticipated that delays might occur and make it impossible to complete the project on time with a single set of forms, the contract provided Falcon with the option of leasing additional forms at the same price.

Eventually, substantial delays did occur, the cause of which is disputed. Falcon contends that early delays were caused at least in part by faulty forms provided by EFCO and by late delivery of some of those materials. EFCO argues that its forms were delivered timely and that all delays were caused by Falcon's problems with labor and materials unrelated to EFCO's performance. Evidently, the trial court believed EFCO for it ruled in EFCO's favor, and Falcon has not specifically challenged that conclusion as clearly erroneous.

When Falcon found itself unable to meet its construction deadlines, it availed itself of its option to lease a second set of forms, and entered into a second contract with EFCO. Further delays made it necessary, less than two months later, for Falcon to lease a third set of forms. Each of the contracts also required EFCO to supply Falcon with other materials necessary for completion of the piers, and Falcon's account was invoiced accordingly.

When the first lease between Falcon and EFCO was signed, Falcon had been awarded only the contract for the construction of the piers. Later, it was also awarded a contract to construct starter segments that were to be built atop two of the piers. In September 1980, therefore, Falcon and EFCO entered into a fourth contract in which EFCO leased to Falcon two sets of the forms required for construction of the starter segments at a cost of $380 per day for each set of forms ($760 total per day). In addition, EFCO leased to Falcon support brackets to be used with the starter-segment forms. The rental for those brackets was calculated and invoiced separately.

Each of the three pier-form-lease contracts between EFCO and Falcon provided for a maximum rental period of 240 days, but each also provided that, if the forms were not then returned to EFCO, rental charges would be resumed fifteen days after "completion of the last lift on the piers [for which] the equipment was required." Falcon contends that these contract terms were subsequently modified by an oral agreement that Falcon would be charged only for days in which the forms were actually in use.

Each party complains about the adequacy of the other's performance. Falcon contends that EFCO was tardy in delivering the initial set of forms, that the design of the forms made it impossible for the internal vibrators to reach the bottom portion of the forms and that, as a result, Falcon was required to do remedial work on the first lift. Falcon also asserts that the design of the forms created difficulty with the alignment process. Falcon, therefore, places at least partial blame for its delays in completing construction upon EFCO. Falcon also complains that its account with EFCO was continuously plagued with inaccuracies and that proper invoicing was never maintained.

EFCO admits that computer error created problems with Falcon's account and that Falcon had complained about inaccuracies. EFCO contends, however, that Falcon never specified the basis of its dissatisfaction with the account and evaded giving any details when EFCO attempted to discuss the matter. EFCO also complains that Falcon did not return the forms as required under the terms of the contract: some were never returned; others were returned only after extensive delay; and some were returned in a damaged, unclean, and unusable condition.

Falcon eventually stopped making payments on its account because of its dissatisfaction with EFCO's billings. EFCO then notified Williams Brothers, the general contractor, and Federal Insurance Company, the bonding company, that Falcon was indebted to EFCO and had refused to pay.

EFCO contends that the notice was based upon EFCO's computer-generated account which EFCO reasonably believed to be accurate at the time. Falcon insists that EFCO knew at the time it issued notice of Falcon's outstanding debt that some of the items in the account were not just and owing.

Falcon also contends that EFCO continued billing Falcon for two complete sets of forms even after substantial amounts of the equipment were returned. The dispute apparently arises out of a disagreement over the agreed-upon conditions for returning equipment. Falcon argues that the amount of rental was to be reduced by the pro-rata value of equipment returned. EFCO contends that the rent on each form was to continue to accrue until a set percentage of the component pieces of the form had been returned.

When efforts to resolve the disputes failed, Falcon filed suit and EFCO filed counterclaims. The matter was tried before the district court without a jury for six days. No opinion was rendered, however, until two years later, after this court had issued a writ of mandamus compelling the district court to enter judgment. The district court then adopted much of EFCO's proposed findings of fact and conclusions of law—often verbatim, including typographical errors and erroneous mathematical calculations—and entered judgment denying any relief to Falcon and granting all of the relief sought by EFCO, including attorneys' fees and prejudgment interest.

## II.

 Falcon's primary contention is that the trial court's findings should be reversed because they demonstrate that they result from a flawed judicial process, laden with error. Falcon asks us to conclude that the trial court did not independently evaluate the evidence and determine the merits of the case. Other than the specific matters that we consider in Part III of this opinion, Falcon does not point out in what respect the findings of fact lack support in the record. In essence, it asks us, instead, to review the record for ourselves and, having thus tried the case *de novo* on the basis of the record alone, either to reverse and enter judgment in its favor, or to remand the proceedings to the district court for a new trial on the theory that the existence of several identifiable errors indicates a complete breakdown of the judicial function.

 This court, however, is not free lightly to embrace the conclusion that a judgment is wrong. The district court's findings of fact cannot be overturned unless they are clearly erroneous. This rule applies whether the trial judge prepared his own findings of fact or whether they were developed by one of the parties and adopted verbatim by the judge.[1] A district court that adopts one party's suggested findings essentially verbatim leaves doubt whether it has discharged its duty to review the evidence for itself and reached its decision on the basis of its own evaluation of the evidence rather than that of an advocate.[2] Yet even when the district court does not provide insight into its thought processes by drafting its findings in its own words, the appellant must demonstrate that particular findings are clearly erroneous.[3] Falcon has failed to meet this burden. Although several of the findings Falcon challenges contain clear error, most do not. Moreover, Falcon has not shown that the findings as a whole are clearly erroneous or even inherently suspect. The district court's procedure and judgment are not so patently defective as to require that we inflict a new trial on the litigants, re-

**1.** Fed.R.Civ.P. 52(a); *Anderson v. Bessemer City, N.C.,* 470 U.S. 564, 572, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citing *United States v. Marine Bancorporation,* 418 U.S. 602, 615 n. 13, 94 S.Ct. 2856, 2866 n. 13, 41 L.Ed.2d 978 (1974); *United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 656–57, 84 S.Ct. 1044, 1047–48, 12 L.Ed.2d 12 (1964)); *Clark v. Mobil Oil Corp.,* 693 F.2d 500, 501 (5th Cir.1982).

**2.** *See Midland Telecasting Company v. Midessa Television Co., Inc.,* 617 F.2d 1141, 1144 n. 5 (5th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).

**3.** *Matter of Multiponics, Inc.,* 622 F.2d 709, 723 (5th Cir.1980).

quiring them to return to the starting line and try the case again. We, therefore, limit our relief to correction of those errors that Falcon has identified.

## III.

Falcon objects to the trial court's reliance upon EFCO's Exhibit 648, a summary of damage calculations made during the course of the trial by EFCO Vice-President, Thomas Brotherton. Falcon contends that the figures presented by Brotherton must be discredited because $65,756.55 of the amount Brotherton calculated had never been claimed by EFCO before Brotherton took the stand, because that figure represents rental charges for a period for which rental payments should have been excluded under the terms of the contract, and because some of the calculations conflict with estimates of amounts due offered by other witnesses.

■ The record amply demonstrates that the amount due EFCO for rental and other legitimate charges remained uncertain until the trial was in midcourse, partially due to computer errors and inadequate accounting methods for which EFCO is responsible and partially due to Falcon's failure to cooperate with EFCO in determining what amounts actually were due. Brotherton's testimony and defendant's Exhibit 648 were offered in response to the trial court's request that some party come forth with a detailed estimate of what was due. Previous testimony of people working on the job site obviously aided Brotherton in deriving appropriate formulas for the amount due, as did the terms of the contract. Given the general confusion of all parties involved as to the appropriate amounts due, the fact that the confused state of affairs was not the sole fault of EFCO, and the consistency of the evidence introduced with the type of claims EFCO had raised since the beginning of the dispute, it cannot be said that the trial court abused its discretion by overruling Falcon's objection to introduction of those figures. The figures did not create unfair surprise.

■ Whether inclusion of the additional rent conflicts with the terms of the contract is a separate issue. Falcon claims that, once the 240 day rental maximum for the period in which the forms were actually in use had expired, the contract relieves it of liability for additional rent until fifteen days after the piers were completed. EFCO argues that the agreement allows additional rental collection beginning fifteen days after the forms are no longer needed. The contract states that additional charges may accrue "15 days after completion of the last lift on the piers where the equipment is required...." Thus, the term in question is somewhat unclear. In its findings of fact, the district court adopted an interpretation of the contract consistent with EFCO's claim and awarded damages accordingly. Upon review of the record and the contracts, we cannot say that the district court's interpretation of either is erroneous. To the extent that Brotherton's estimates differ from those of his salesman, Gleason, the discrepancy can be attributed to Gleason's self-avowed tendency to give all benefit of doubt to his customers. The trial court's determinations of credibility, even among various statements of a single witness, are normally not subject to review.[4] In any event, the court certainly did not commit clear error by crediting Brotherton's testimony in this instance.

■ Similarly, it was not clearly erroneous for the district court to adopt Brotherton's formula for establishing when rental fees should cease rather than the one Gleason assumed would apply. Brotherton testified that he believed EFCO was entitled to charge the full rental price for each set of forms until 90% of the materials had been returned. He explained that, when customers requested a set rate for rent, accruing only when the entire form was in use rather than on a piece by piece basis as each piece of the form was delivered for assembly, he believed it fair to continue charging rent for the entire form until nearly all the individual pieces were re-

---

4. *Ayers v. United States,* 750 F.2d 449, 456 (5th Cir.1985).

turned. Gleason, who had not been involved in determining the payment formula, testified that he assumed rent would be pro-rated as each piece was returned. The trial court was by no means bound to accept Gleason's assumptions. Furthermore, Brotherton's later testimony indicates that the rent calculations submitted in Exhibit 648 and adopted by the trial court were adjusted to terminate rental fees when 50% of the material from each form was returned. Because the contract itself does not establish precisely how the end of the rental period should be determined, the trial court's decision to accept this compromise formula is not clearly erroneous and, indeed, appears reasonably calculated to approximate the expectations of both contracting parties.

█ Falcon also complains that it was unfairly charged for equipment it never returned. From March 28, 1981 through November 6, 1981, Falcon was charged additional daily rent at .25% of the dollar value of the equipment in accordance with the terms of the contract. On November 6, 1981, it was determined that the equipment would not be returned, and Falcon was charged for the value of the equipment, again pursuant to the terms of the contract. No additional rent was charged after November 6. Falcon was not charged rent for equipment it had purchased. It did not have the option to purchase the equipment in lieu of fulfilling its contractual obligation to pay rent. If Falcon had returned the equipment on November 6, EFCO would remain entitled to rent for the extended period of delay. The additional amount Falcon was charged on November 6 gave Falcon title to the equipment on that date, but not before. It was not error to enforce EFCO's full set of rights and expectations under the terms of the contract.

Falcon correctly points out that the itemized amounts the trial court adopted from EFCO's proposed findings of facts and conclusions of law do not add up to the total amount the court determined was due. It is clear, however, that this is the result of mathematical and typographical errors, for the correct amounts can easily be calculated from the formulas given in the same findings of fact in which the errors appear and by review of Exhibit 648 and EFCO's proposed findings. The following corrections, therefore, shall be made to the district court's mixed findings of fact and conclusions of law:

(1) In paragraph number 32, the amount of award shall be reduced from $25,617.77 to $15,617.77 to conform with the evidence.

(2) In paragraph number 34, the figure for total rent due on set 1 of the forms shall be changed from $35,620 to $75,620 to conform with the evidence and the formula for calculating outstanding rent contained in that paragraph.

(3) In paragraph number 35, the number of days in the formula for calculating outstanding rent due on set 2 of the forms shall be corrected from 207 days to 206 days and the total due adjusted from $78,208 to $78,280 so that the formula employed and the amount calculated are consistent with the evidence and the clear intent of the district court.

The final factual finding that Falcon argues is clearly erroneous is the district court's determination in paragraph number 46 that EFCO notified Williams Brothers in good faith of amounts EFCO reasonably believed were owed to Falcon and that Falcon had not complained about the amounts reflected on its monthly billing statements. The finding that the notice EFCO sent to Williams Brothers was sent in good faith is not clearly erroneous. The record does not establish that Brotherton knew at the time that the notices were sent that they contained amounts to which EFCO was not entitled. The fact that the notices may have been sent to get Falcon's attention is irrelevant.

The trial court's statement that Falcon never complained about its billing statements is clearly erroneous to the extent that it suggests that absolutely no dissatisfaction was ever communicated. Witnesses testifying for EFCO conceded that general complaints were registered. EFCO admits as much in its briefs on this appeal. Falcon fails, however, to establish how the

error is material in view of the substantial evidence—including evidence referred to us in Falcon's brief—that Falcon never explained the bases of its complaints. The essence of finding number 46, therefore, that EFCO did not file a false claim with Williams Brothers and that it notified Williams Brothers in good faith of amounts it reasonably believed were owed by Falcon, is not clearly erroneous.

### IV.

Falcon also contends that the trial court improperly granted attorneys' fees to EFCO in the amount of 10% of the amount of judgment, together with interest thereon at the rate of 12% per annum from November 7, 1981 to the date of the district court's judgment. In Texas, pre-judgment interest may not be allowed on an award of attorneys' fees.[5] Once the errors in the trial court's findings of fact numbers 32, 34 and 35 have been corrected, however, it becomes absolutely clear that the $345,-891.05 figure upon which 12% interest is to be calculated under paragraph 43 does not include attorneys' fees. The interest award, therefore, is correct as it stands.

### V.

Falcon presents a legitimate complaint, however, about the lack of explanation given by the trial court for its determination that 10% of the judgment represents appropriate attorneys' fees. An award of attorneys' fees is authorized by Tex.Civ. Stat.Art. 2226, the text of which is set forth in the footnote,[6] and the question of what is a reasonable attorneys' fee is one of fact to be determined within the sound discretion of the trial court.[7] The fee is not, however, to be simply fixed at a percentage of the amount involved, for Texas courts have stated several factors to be applied when awarding fees under Article 2226. They are:

1. The nature of the case; its difficulties, complexities and importance, and the nature of the services required to be rendered by counsel.

2. The amount of money involved, the client's interest at stake, and the amount of time devoted by the attorney in the benefit derived by the client.

3. The time necessarily spent by the attorney, the responsibility imposed upon counsel, and the skill and experience reasonably needed to perform the services.[8]

These factors should also be considered by a federal court when it awards attorneys' fees pursuant to article 2226. Appellate courts are left with no basis to determine whether the trial court has abused its discretion if that court gives no explanation for the award it makes. In this case, the trial court concludes baldly that 10% of the total judgment is a reasonable amount for attorneys' fees. Because Texas courts require an analysis of attorneys' fees awards under Article 2226 similar to the one required with regard to attorneys' fees awarded under the authority of federal statutes,[9] a more detailed explanation is required. The award of attorneys' fees is, therefore, remanded to the district court for clarification in the light of applicable state law. If additional evidence is required to determine an appropriate amount

---

5. *Hervey v. Passero,* 658 S.W.2d 148, 149 (Tex. 1983).

6. Any person having a valid claim against a person or corporation for personal services rendered, labor done or material furnished ... or suits founded upon a sworn account or accounts, may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount of attorney's fees, if represented by an attorney. Tex.Civ.Stat.Art. 2226.

7. *Law Offices of James R. Bass, Inc. v. Bryan,* 609 S.W.2d 652, 654 (Tex.Civ.App.1980).

8. *Golden v. Murphy,* 611 S.W.2d 914, 916 (Tex. Civ.App.1981).

9. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).

to award, the court is instructed to hold a hearing for that purpose.

For the reasons stated above, the judgment of the district court is AFFIRMED with the above-indicated amendments except that the award of attorneys' fees is VACATED and that question is REMANDED for further consideration consistent with this opinion.