GULF UNION INDUSTRIES, INC.,
Plaintiff–Appellee,

v.

FORMATION SECURITY, INC.,
Defendant–Appellant,

v.

PANHANDLE BANK & TRUST CO.,
Defendant–Appellee.

FORMATION SECURITY, INC.,
Plaintiff–Appellant,

v.

GULF UNION INDUSTRIES, INC.,
Defendant–Appellee.

No. 87–1137.

United States Court of Appeals,
Fifth Circuit.

April 19, 1988.

John Tull, Jr., Tabolowsky, Prager & Schlinger, Page & Addison, Carol E. Farquhar, Dallas, Tex., for Formation Sec., Inc.

Jeffrey L. Hart, Austin, Tex., for Gulf Union.

S. Leon Mitchell, Borger, Tex., for Panhandle Bank & Trust Co.

Before WILLIAMS and HIGGINBOTHAM, Circuit Judges, and BUCHMEYER *, District Judge.

JERRE S. WILLIAMS, Circuit Judge:

Appellee Gulf Union Industries, Inc. ("Gulf Union") delivered a bank cashiers check and a promissory note, both in the amount of $50,000, to Panhandle Bank & Trust Company pursuant to a Stock Purchase Agreement with Appellant Formation Industries, Inc. ("Formation"). Gulf Union later terminated the Agreement and demanded return of its escrow deposits. This case decides the ownership of those deposits.

Based upon diversity of citizenship, Gulf Union sued Formation and Panhandle Bank and Trust in federal district court in Texas.[1] The court granted summary judgment

---

\* District Judge of the Northern District of Texas, sitting by designation.

1. Jurisdiction is properly based on diversity of citizenship. 28 U.S.C. § 1332. Gulf Union is a Louisiana corporation, and Formation and Panhandle Bank and Trust are both citizens of Texas. Formation originally sued Gulf Union

on the promissory note in Texas state court, asking for declaratory judgment on ownership of the escrow monies. Meanwhile, Gulf Union sued Formation in federal court. Formation's state court suit was removed to federal court and consolidated with Gulf Union's case. Panhandle Bank & Trust interpled the escrow de-

in favor of Gulf Union, ordering Formation to return the deposits and pay Gulf Union's attorney's fees in the amount of $22,006.92. The district court ordered that Panhandle Bank & Trust's attorney's fees be paid out of the escrow deposits. Formation appeals the order of summary judgment and contests Gulf Union's attorney's fees.

## I. *Facts*

Formation and Gulf Union entered into a Stock Purchase Agreement dated June 20, 1985, and an Addendum dated July 15, 1985. The Agreement provided for Formation to sell to Gulf Union 100 percent of the outstanding shares of First Savings & Loan Association of Borger, Texas ("First Savings"). Upon execution of the Agreement and in accordance with its terms, Gulf Union delivered to trustee Panhandle Bank & Trust a $50,000 cashier's check and a $50,000 promissory note. The check and note were made as good faith deposits, to be returned to Gulf Union on certain conditions set out in the Agreement.

Paragraph 7.0(a)(ii) of the Agreement provides for return of the escrow deposits if regulatory approval "is diligently pursued ... but not obtained."[2] The proprie-

ty of summary judgment in this case rests upon there being no genuine issue of material fact as to whether Gulf Union diligently pursued regulatory approval.

In order to obtain regulatory approval, Gulf Union needed to file an application with the Federal Home Loan Bank ("FHLB") of Dallas. Gulf Union, however, did not file an application with FHLB. Rather, it determined that filing an application would be futile based upon a meeting with William Churchill, Supervisory Agent of FHLB. Mr. Churchill informed Gulf Union that he would not recommend regulatory approval, for two reasons: (1) the Securities Exchange Commission had entered a consent decree against Roger Le-Blanc, a director, officer, and principal beneficial shareholder of Gulf Union, and (2) Gulf Union had requested that FHLB waive certain Generally Accepted Accounting Procedure ("GAAP") requirements.[3]

The meeting between Gulf Union and Mr. Churchill occurred on August 12, 1985. Two weeks later on August 26, 1985, Gulf Union sent a letter to Formation in which it said it was terminating the Agreement pursuant to the thirty-day "free look" provi-

posits into the registry of the federal district court.

**2.** Paragraph 7.0 of The Agreement reads as follows:

*7.0 Deposit.* Contemporaneously with the execution of this Agreement, Buyer shall deliver to Panhandle Bank & Trust Company, located in Borger, Texas ("Trustee") a Bank cashier's check in the amount of $50,000. (The "deposit") to be held by Trustee in a segregated account and investigated only in short-term investments and a promissory payable to seller in the amount of $50,000.00 due 180 days from the date hereof, bearing no interest, to be returned to Buyer or paid over to Seller as follows:

(a) *If* (i) the sale of the Shares is closed pursuant to this Agreement, *(ii) regulatory approval is diligently pursued by Buyer but not obtained,* (iii) Seller breaches its Agreement, (iv) the Buyer does terminate this Agreement pursuant to paragraph 8, or paragraph 5.9 or paragraph 9.4, (v) the Buyer is unable to obtain satisfactory financing, as outlined in paragraph 9.4, *the deposit together with all interest earned thereon, shall be paid over to Buyer.*

(b) If the sale of the Shares is not closed for any reason other than set forth in paragraph 7(a) and paragraph 8.0, the deposit together with all interest earned thereon, shall be paid by Trustee to Seller, as consideration for Seller having entered into this Agreement. (emphasis added).

**3.** Requesting FHLB to waive GAAP requirements was one method attempted by Union to accommodate First Savings financial problems. In late June of 1985, Gulf Union realized that First Savings was having difficulties. Gulf Union's motion for summary judgment describes these difficulties as operational problems; economic instability in Borger due to resolution of the "white oil" controversy against independent producers; overstated income in excess of $2.5 million; insider loans of questionable performability in excess of $3 million; and deferred losses on first mortgage loans in excess of $4 million. In light of these difficulties, Gulf Union and Formation entered into an Addendum to the Agreement, which extended several time periods of the Agreement, enabling Gulf Union to investigate further the sale and devise a financial plan. The Addendum, however, did not extend the period in which Gulf Union could terminate the Agreement without liability.

sion of paragraph 8.0.[4] In fact, the thirty-day termination period had already expired on July 20, 1985. Thus, Gulf Union does not assert on appeal that termination occurred within the thirty-day "free look" provision. Gulf Union maintains only that it is entitled to summary judgment as a matter of law, because paragraph 7.0(a)(ii) of the Agreement provides for the return of escrow deposits if regulatory approval is diligently pursued but not obtained.

## II. *Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In bringing this appeal, Formation urges that the district court erred in granting Gulf Union's motion for summary judgment, because genuine issues of material fact remain to be settled. These alleged fact issues include: (1) waiver of the deposits by Gulf Union, (2) fraud-like behavior on the part of Gulf Union, and (3) lack of diligence in Gulf Union's pursuit of regulatory approval. The third assertion is by far the most meritorious, but we consider each of them in turn.

### A. Waiver

■ We promptly dispose of Formation's contention that Gulf Union waived its right to the return of the deposits. Formation claims that Gulf Union waived the return of the funds under paragraph 7.0, by referring only to paragraphs 8.0 and 8.1 in the letter of termination, and by unilaterally making regulatory approval impossible to

obtain. Formation, however, failed to raise waiver in any pleading at the district court level. Consequently, the defense is now unavailable. Affirmative defenses cannot be raised for the first time on appeal. *See Golden Oil Co. Inc. v. Exxon Co. U.S.A.*, 543 F.2d 548, 551 n. 3 (5th Cir.1976).

### B. Fraud and Bad Faith

■ Formation claims that the circumstances of this case indicate bad faith or fraud on the part of Gulf Union. It claims that Gulf Union created the "sham" of a regulatory approval obstacle because it was unsuccessful in extending the thirty day "free look" period of paragraph 8.0. Formation claims Gulf Union contrived this obstacle to escape its obligations under the Agreement.

Regardless of the merit of this theory, we are unable to consider it. Formation failed to raise the allegations before the district court, and this omission cannot be cured now. Factual assertions that defeat a summary judgment must be presented to the district court, not introduced for the first time at the appellate level. *DeBardeleben v. Cummings*, 453 F.2d 320, 324 (5th Cir.1972).

### C. Diligence

■ Formation argues that summary judgment is improper because a genuine issue of material fact exists as to whether Gulf Union diligently pursued regulatory approval. Formation contends that because Gulf Union failed to file an application with FHLB, diligent pursuit was not carried out as required under paragraph 7.0. Paragraph 6.0 of the Agreement purports to require Gulf Union to file such an application.[5] Gulf Union claims that be-

---

4. Paragraph 8.0 provides:

    *Due Diligence Review.* Buyer shall have thirty (30) days after the date of this Agreement to complete the review of the Association. Buyer may terminate this Agreement by written notice to that effect given to Seller within 30 days from the date hereof if Buyer, in Buyer's sole discretion regards as unsatisfactory the results of the review to be conducted by Buyer of the books, records, and business of the Association within such 30 day period. From

and after such termination, this Agreement shall be of no further force and effect and neither Seller nor Buyer shall have any liability or obligation to each other.

5. Paragraph 6.0 provides:

    6.0 *REGULATORY APPROVALS.* Buyer shall file all necessary applications with the FHLB and/or the State and any other regulatory agency for which approval is required within sixty (60) days from the date of this Agreement and shall use their best efforts in

cause FHLB supervisory agent Churchill had already pointed out a virtually absolute obstacle to his recommending regulatory approval, filing the application would have been futile and wasteful.[6]

We agree with the district court that paragraph 6.0 of the Agreement is merely a covenant assigning to Gulf Union the expense of filing applications. Paragraph 6.0 is not a condition of the Agreement, nor does it define due diligence under paragraph 7.0. Termination of the Agreement excused performance under paragraph 6.0. Thus, we find that the failure of Gulf Union to file applications does not in and of itself constitute a lack of diligence in its pursuit of regulatory approval. Indeed, Formation admits in its brief that regulatory approval was impossible to obtain under the circumstances of LeBlanc's SEC consent decree and the requested GAAP waivers. Formation urges, however, that the consent decree and the requested GAAP waivers were obstacles to regulatory approval that could have been cured through diligence on the part of Gulf Union.

We acknowledge that Gulf Union could have retracted its request of GAAP waivers. Such action, however, would not have ensured regulatory approval, because it would have had no effect on the consent decree against Mr. LeBlanc. Formation urges that Gulf Union should have removed Mr. LeBlanc as a control person of Gulf Union. It asserts that diligence under paragraph 7.0(a)(ii) required such a sacrifice. There is nothing in the contract which would require the principal owner of the business to sell it to enable the regulatory approval of the business. The parties contracted with the tacit understanding that the business ownership would continue as it was. Whether or not the resignation and sale by Mr. LeBlanc would have secured regulatory approval, such a step clearly was not contemplated by the parties

at the time of formation. It does not present a material fact issue now.

### III. *Attorney's Fees*

■ The standard of review for an award of attorney's fees is that of abuse of discretion. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). As the prevailing party, Gulf Union was awarded $22,006.92 in attorney's fees, pursuant to TEX.CIV.PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1986). The Texas statute is applicable because this is a diversity action and attorney's fees, as an element of damages, are a matter of substantive state law. *Shelak v. White Motor Co.*, 636 F.2d 1069, 1072 (5th Cir.1981).

In support of its request for attorney's fees, Gulf Union submitted to the district court an initial affidavit describing 219 hours spent on this case by four attorneys and several law clerks. The affidavit also provided a breakdown of expenses (witness fees, bond fee, copies, postage, long-distance telephone calls, and travel), totalling $1,709.92. Formation countered Gulf Union's affidavit with an affidavit of its own, and a brief in support of its affidavit. Formation's responses allege that the amount claimed by Gulf Union is unreasonable, excessive, unnecessary, not comparable to fees and expenses in similar cases, and not reasonably related to the amount in controversy. Formation also objected to the absence of a detailed account of the 219 hours, and requested a hearing on attorney's fees.

In its presentation to the district court, Formation relied exclusively on Texas law to argue the unreasonableness of Gulf Union's fees. Formation now claims on appeal that the district court erred in not following the federal guidelines for determining attorney's fees. Those guidelines, set out by this Court in *Johnson, supra,* require a federal district court to consider

---

cooperation with Seller, to obtain and to comply with all requisites statutory and regulatory approvals and other requirements necessary for the valid and legal consummation of the transactions contemplated through Buyer.

**6.** Gulf Union estimates that filing an application with FHLB would have cost between $10,000 and $50,000. Formation, however, disputes this amount.

specific factors in determining the amount to be awarded when fees are awarded under federal law.[7]

Even when applicable, we have held that *Johnson* criteria should be applied flexibly, not as a requirement that district courts parrot the twelve factors. *Copper Liquor Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581, 583 (5th Cir.1980), *reh'g en banc*, 684 F.2d 1087 (5th Cir.1982). The district court in this case did address the objections raised in Formation's pleadings and did refer to the particularly applicable *Johnson* factors: "(1) Ascertain the nature and extent of the services supplied by the attorney; (2) Value the services according to the customary fee and quality of the legal work; and (3) Adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case." *Id.*, citing *In re First Colonial Corp.*, 544 F.2d 1291, 1299–1300 (5th Cir. 1977).

The district judge considered the hours spent on this case and found them to be reasonable in light of the complexity of the issues. He considered the amount charged as attorneys' fees and found it to be reasonable, based on his own familiarity with fees in similar cases. He found the ex-

penses sufficiently itemized, and noted that the amount sought in attorney's fees was approximately twenty percent of the amount recovered by the plaintiffs.[8] Finally, he stated that no other *Johnson* factors required the adjustment of compensation in this case. These findings are supported by Gulf Union's affidavits, and as such are not clearly erroneous.[9] Under the circumstances of this case, we need not decide whether the full *Johnson* analysis should have been stated. Formation did not assert in the trial court that the federal law as to attorneys' fees applied. A review of the case law, however, indicates that we follow the state law fee-setting requirements in cases involving state substantive law.[10]

■ Formation also claims as a denial of due process that the district court erred in refusing to hold a hearing on attorney's fees. Formation cites *Smith v. Student Non-Violent Coordinating Comm.*, 421 F.2d 522 (5th Cir.1969), for the proposition that it is entitled to a hearing on attorney's fees. *Smith*, however, differs significantly from the case before us. There, the district court had awarded attorney's fees as a sanction. The record contained no indication of whether the sanctioned party had

---

7. *Johnson, supra*, 488 F.2d at 717–19 lists the following guidelines:

(1) The time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fees, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

8. These considerations satisfy the requisite showing for attorneys' fees under Texas law. *See, e.g., Golden v. Murphy*, 611 S.W.2d 914, 916 (Tex.Civ.App.1981, no writ) (determining fees according to nature of case, money involved, and time spent by attorney).

9. The decision to award attorney's fees and the total amount awarded must be reviewed under

an abuse of discretion standard. The subsidiary fact findings of that decision, however, are reviewable under the clearly erroneous standard. *Cooper Liquor, supra*, 684 F.2d at 1094.

10. We have affirmed attorney's fees computed along state-law guidelines in diversity cases. *See Powell v. Old Southern Life Ins.*, 780 F.2d 1265, 1267–68 (5th Cir.1986); *Woods v. Int'l Harvester Co.*, 697 F.2d 635, 640–41 (5th Cir. 1983); *Carlton v. H. C. Price Co.*, 640 F.2d 573, 582–84 (5th Cir.1981). *Cf. Atlantic Richfield Co. v. Manges*, 702 F.2d 85, 87 (5th Cir.1983) (affirming fees computed along *Johnson* guidelines, but not indicating that full compliance with *Johnson* was required). We have also remanded awards of attorney's fees, with instructions for district courts to compute fees and clarify findings according to state law considerations. *See Jerry Parks Equip. Co. v. Southeast Equip. Co. Inc.*, 817 F.2d 340, 344 (5th Cir.1987); *Falcon Constr. Co. v. Economy Forms Co.*, 805 F.2d 1229, 1235 (5th Cir.1986). *But see Sweeney v. Vindale Corp.*, 574 F.2d 1296, 1301 (5th Cir. 1978) (diversity case remanding attorney's fees to district court for specific findings according to *Johnson* elements).

been given an opportunity to present evidence against the amount claimed. This Court remanded for a hearing. *See Smith, supra,* at 524.

Sanctions are not involved in this case. The attorney's fees were an entitlement under applicable state law. Formation had ample opportunity to submit evidence in opposition to the amount of fees sought. Formation claims it could submit only conclusory statements because Gulf Union did not sufficiently itemize its expenses or describe in detail the services performed.[11] We find that Gulf Union's affidavits provided enough evidence to enable adequate reply by Formation. They were also adequate to support the district court's decision. The affidavits stated the number of hours, the qualifications of the lawyers, the amount of research and preparation involved, and a breakdown of expenses. Under these circumstances, failure to hold a hearing was not a violation of due process.

### IV. *Conclusion*

Summary judgment in favor of Gulf Union is proper; there are no genuine issues of material fact. Gulf Union diligently pursued regulatory approval, and is entitled to its escrow deposits. Moreover, the district court did not abuse its discretion in awarding attorney's fees to Gulf Union in the amount of $22,006.92.

AFFIRMED.

---

11. Gulf Union responded to Formation's affidavit and brief with a detailed account of its expenses and services. This account, however, post-dated the district court's ruling on attorney's fees.