**Raymond F. KEETON**

v.

**WAL–MART STORES, INC.,
D/B/A Sam's Club.**

No. 1:97CV406.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 28, 1998.

Steven Carl Barkley, Beaumont, TX, for Plaintiff.

Hubert Oxford III, Benckenstein & Oxford, Beaumont, TX, for Defendant.

## MEMORANDUM OPINION RE MOTION FOR JUDGMENT

HINES, United States Magistrate Judge.

Plaintiff won a jury verdict after a trial on the merits.[1]  Now pending is plaintiff's mo-

---

1. The parties consented to adjudication of this action before the United States Magistrate Judge. See 28 U.S.C. § 636(c)(1) (1993). Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) (1998).

2. Plaintiff initiated this action June 27, 1997 in the 60th District Court of Jefferson County, Tex-

tion for judgment wherein he requests the court to order defendant to pay the amount awarded by the jury, $3,000, plus prejudgment interest, attorney's fees of $23,025 and costs of $3,001.85.

## I. BACKGROUND

In this removal action,[2] plaintiff seeks recovery for injuries sustained while eating a sandwich purchased from the delicatessen at the Sam's Club store in Beaumont, Texas. The sandwich contained a hard plastic cube about the size of a pencil eraser.  The cube had broken off of a vegetable dicer machine used in preparing sandwich ingredients.  Unaware, plaintiff bit down on the cube while eating the sandwich, and sustained a painful injury.

Plaintiff sought treatment from a dentist. The dentist removed four teeth.  Eventually, the dentist also replaced the missing teeth with a bridge in the top of plaintiff's mouth.

Plaintiff's original state court petition sought to impose liability under common law negligence and breach of implied warranty theories.  (Dockt.No. I).  His pleadings retained that status for the majority of the time the case pended in this court.  However, on March 18, 1998, with jury selection scheduled March 20, plaintiff sought leave to file a second amended complaint asserting a cause of action under the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE ANN § 17.50 *et al* (1998) (hereinafter "DTPA").

At the pretrial conference on March 20, plaintiff's counsel acknowledged that the primary reason for seeking the amendment was to secure a basis for recovery attorney's fees. Plaintiff's counsel argued that addition of the DTPA claim would require little, if any, additional discovery by the parties.  Over defense counsel's objection, this court granted plaintiff leave to file the Second Amended Complaint.[3]  Pursuant to a mandatory 60

---

as.  Defendant filed its notice of removal July 25, 1997.  (*See* Dockt.  No. 1).

3. On March 3, 1998, plaintiff sought leave to file a first amended complaint not substantively different from the second amended compliant.  The court had not acted on the motion to file the first

day abatement under the DTPA,[4] trial was rescheduled for May 4.

On May 4, defense counsel filed a "Statement Regarding Settlement Offer" reflecting that on May 2, defendant offered to settle this case for $8,000 plus plaintiff's attorneys' fees of $2,500.[5] Plaintiff rejected the offer and the case proceeded to trial. The parties agreed to allow the court to determine what amount of attorney's fees, if any, should be awarded if plaintiff prevailed at trial.

On May 5, the jury ruled in plaintiff's favor on both the negligence and DTPA claims, awarding plaintiff compensatory damages of $2,500 for past medical expenses and $500 for pain and suffering. The jury declined to find that defendant's DTPA violation was "knowing," thus eliminating plaintiff's right to recover additional damages.[6] Thus, the aggregate principal amount of plaintiff's verdict is $3,000.

## II. THE ATTORNEY'S FEE DISPUTE

After trial, plaintiff's counsel submitted a motion and proposed judgment awarding plaintiff the $3,000 jury verdict, prejudgment interest, $23,025 in attorney's fees and $3,001.85 in costs.[7] (*See* Dockt. No. 78). Plaintiff argues that under Texas law, attorney's fees awarded in connection with DTPA liability are to be computed on a straight hourly basis. Plaintiff seeks reimbursement of an attorney fee at the rate of $100 per hour, and counsel's affidavit claims that he spent 145.25 hours in prosecuting the case.[8] Thus, plaintiff seeks an award of $14,525 for his counsel's trial services. Plaintiff further seeks a conditional attorney fee award of an additional $3,000 should the case be appealed to the circuit court of appeals, an additional $2,000 should the case be appealed to the supreme court, and $3,500 if the supreme court grants a writ of certiorari. Finally, plaintiff seeks recovery of $3,001.85 in court costs, including a $1,900 expert witness fee.

Wal–Mart opposes any award of attorney's fee on the ground that under Texas law, attorney's fees are not recoverable on a negligence claim, and plaintiff has failed to segregate the time spent in prosecuting the negligence and DTPA claims. Alternatively, Wal–Mart argues that because the jury's verdict awarded less than offered in settlement, the DTPA limits plaintiff's attorney's fees to the $2,500 offered in its May 4 settlement offer. Wal–Mart also argues that plaintiff has not presented sufficient evidence to show that the requested attorney's fees are reasonable and necessary as contemplated by the DTPA. Finally, Wal–Mart contends plaintiff's inclusion of expert witness fees is improper.

## III. LEGAL PRECEPTS

█ A party's entitlement to attorney's fees is determined by state law. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (noting right to receive fees is substantive and thus, governed by

amended complaint before the motion to file a second amended complaint was submitted.

4. Section 17.505(a) states:"As a prerequisite to filing a suit seeking damages ..., a consumer shall give written notice to the person at least 60 days before filing the suit ...." Subsection 17.505(d) mandates abatement if suit is filed in the absence of the 60 notice. DTPA § 17.505(d).

5. Section 17.5052(f) states that a settlement offer made "by a person against whom a claim under this section is pending that complies with [§ 17.5052(d)] and that has been rejected by the consumer may be filed with the court with an affidavit certifying its rejection." DTPA § 17.5052(f).

6. DTPA § 17.50(b)(1) ("If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000 ....").

7. Plaintiff's motion also requested $800 in sanctions against defendant. The court has previously ruled on the parties' cross motion for sanctions, thus mooting this item. (*See* Dockt. No. 80).

8. Plaintiff's *motion* states that 145.25 hours were spent in preparing and prosecuting this action. However, the *brief* in support of plaintiff's motion indicates that plaintiffs' counsel spent a total of 165.25 hours. The difference is unexplained. Consistent with plaintiff counsel's motion, however, the court considers the request for attorney's fees to be 145.25 hours.

state law), *Tanker Mgmt., Inc. v. Brunson,* 918 F.2d 1524, 1527 (11th Cir.1990).

In diversity actions, it is an "as-yet unanswered question whether state or federal law controls the calculation of fees, as distinguished from their entitlement." *Robinson v. State Farm,* 13 F.3d 160, 164 (5th Cir. 1994), *citing Powell v. Old Southern Life Ins. Co.,* 780 F.2d 1265, 1267–68 (5th Cir.1986). The Fifth Circuit panel has avoided answering the question "because the Texas courts look to many of the same factors as do the federal court in making attorney fee awards." *Robinson,* 13 F.3d at 164, *citing, Atlantic Richfield v. Manges,* 702 F.2d 85, 87 (5th Cir.1983). This uncertainty has led to conflicting rulings. *Compare Atlantic Richfield,* 702 F.2d at 87 *and Ferguson v. F.D.I.C.,* Civ. Action No. 3:91CV2494D, 1997 WL 279885 * 1–2 (N.D.Tex. May 13, 1997) (applying federal factors) *with Gulf Union Indus., Inc. v. Formation Sec., Inc.,* 842 F.2d 762, 767 & n. 10 (5th Cir.1988) (applying state law) (citing cases).

### A. Federal Standards

■■■ Under federal law, calculation of attorney's fees involves a two-step process. First, the court calculates a "lodestar" by multiplying the reasonable number of hours expended on the case by the reasonable hourly rate for the participating lawyers. *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998) (*citing, Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.1995), *cert. denied,* 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995)); *United States Leather, Inc. v. H & W Partnership,* 60 F.3d 222, 229 (5th Cir.1995). Second, the lodestar is adjusted upward or downward depending on the circumstances of the case. *Id.* Adjusting the lodestar fee requires consideration of 12 factors first articulated by the Fifth Circuit panel in *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 717 (5th Cir.1974). *Riley v. City of Jackson, Miss.,* 99 F.3d 757, 760 (5th Cir.1996). Those factors are:

(1) the time and labor required for litigation;

(2) the novelty and difficulty of the questions presented;

(3) the skill required to perform the legal services properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the result obtained;

(9) the experience, reputation and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Id.* at 717–19. The district court must "explain how each of the *Johnson* factors affects its award, regardless of their (sic) specific factual significance." *Longden v. Sunderman,* 979 F.2d 1095, 1099–1100 (5th Cir. 1992).

### B. Texas Standards

Texas enacted DTPA to "protect consumers against false, misleading, and deceptive trade practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." DTPA § 17.44. Integral to that legislative purpose was the provision authorizing a consumer's ability to recover reasonable and necessary attorney's fees in cases where liability is established. *See* DTPA § 17.50(b)(1) (1973) (providing recovery of attorney's fees in original version of DTPA), (*recodified as modified at* § 17.50(d)); *see also, Standard Fire Ins. Co. v. Stephenson,* 963 S.W.2d 81, 92 (Tex.App.—Beaumont 1997, *no writ*) (noting remedial purpose of DTPA includes provision for attorney's fees).

■■■ The most recent enunciation of the Texas rule regarding recovery of attorney's fees in DTPA actions is *Arthur Andersen & Co. v. Perry Equipment Corp.,* 945 S.W.2d 812, 817 (Tex.1997). There, the court reaffirmed the general rule that a plaintiff must prove that a specific requested amount is reasonable and necessary. The court stated that the jury or fact finder may consider a

**658**

contingent fee agreement, but that the award cannot be based solely on a contingent fee agreement. Thus, a plaintiff must submit a specific dollar amount, not a percentage of recovery, to the jury. Further, the plaintiff must show that the amount submitted is reasonable and necessary.

The DTPA also has a policy of promoting extra-judicial settlements. *Hines v. Hash,* 843 S.W.2d 464, 468 (Tex.1992) (stating that purpose of DTPA notice provision is "to discourage litigation and encourage settlement of consumer complaints.") (*citing, Schepps v. Presbyterian Hosp.,* 652 S.W.2d 934, 938 (Tex.1983) (holding that purpose of the notice provision is to encourage pre-suit negotiations and avoid excessive costs of litigation, and that purpose can be accomplished by abatement)); *see also,* DTPA § 17.5052. Thus, the DTPA itself imposes special rules when the amount recovered at trial does not exceed the amount offered in settlement.

Specifically. DTPA allows recovery of attorney's fees by a prevailing plaintiff, DTPA §§ 17.50(d), but provides a mechanism to cap attorney's fees where a reasonable offer to settle the case and reimburse the consumer's attorneys' fees is rejected. *See,* DTPA §§ 17.5052(f), (g); *America Online, Inc. v. Williams,* 958 S.W.2d 268, 275 (Tex.App. 1997) (attorneys' fees may be capped pursuant to § 17.5052(h)). The provision controlling limitation of attorney's fees is section 17.5052(h):

> If the court makes the finding described by Subsection (g),[9] the court shall determine reasonable and necessary attorneys' fees to compensate the consumer for attorneys' fees incurred *before the date and time of the rejected settlement offer.* If the court finds that the amount tendered in the settlement offer to compensate the consumer for attorneys' fees under Subsection (d)(2) is the same as, substantially the same as, or more than the amount of reasonable and necessary attorneys' fees in-

curred by the consumer as of the date of the offer, *the consumer may not recover attorneys' fees greater than the amount of fees tendered in the settlement offer.*

DTPA § 17.5052(h) (emphasis supplied).

■ This section provides two bases for limiting a consumer's attorneys' fees. First, if damages offered in settlement equal or exceed damages actually awarded by the trier of fact, a consumer's attorney's fees are limited to those reasonable and necessary as of the time of the rejection. This limitation itself is limited by the second sentence of 17.5052(h). Thus, if the attorney's fees tendered in an earlier offer equal or exceed the amount found to be reasonable and necessary under the first sentence in 17.5052(h), then the consumer's attorney's fees may not exceed the amount tendered in the settlement offer.

■ The defendant bears the burden of establishing the reasonableness of the original offer. *See Lone Star,* 879 S.W.2d at 123 (noting that under DTPA § 17.505(d), predecessor to 17.5052(h), defendant had burden of establishing reasonableness of pre-trial offer to reimburse plaintiff's attorneys' fees) (*citing, Cail,* 660 S.W.2d at 815). Should the limitation provision of 17.5052(h) not apply, the court should determine the consumer's attorney's fees under the general attorney's fee provision under 17.50(d).

## IV. DISCUSSION AND ANALYSIS

Although federal and Texas law substantially coincide with regard to calculation of reasonable attorney's fees generally, application of special DTPA rules could produce a markedly different result in this case. Thus, it is appropriate for the court to calculate and then compare attorney fee awards under both standards.

> (1) the amount of damages tendered in the settlement offer; or
> (2) the amount of damages found by the trier of fact.
> DTPA § 17.5052(g).

---

9. Section 17.5052(g) states that "[i]f the court finds that the amount tendered in the settlement offer for damages under Subsection (d)(1) is the same as, substantially the same as, or more than the damages found by the trier of fact, the consumer may not recover as damages any amount in excess of the lessor of":

## A. Calculation under Federal Law

### 1. The Lodestar

Under federal standards, attorney fee awards begin with calculation of a "lodestar." The lodestar is a product of the number of hours spent on the case multiplied by the attorney's hourly wage. Plaintiff counsel's hourly rate of $100.00 per hour is not challenged, and it appears consistent with the prevailing rate for younger attorneys in this geographical region.

Plaintiff's counsel avers that he spent approximately 145.25 hours preparing for trial of this case. Neither Wal–Mart nor the court has a basis to challenge this assertion. However, Wal–Mart's objection that counsel has not segregated his time between the negligence claim and the DTPA claims must be addressed. Further, the court has an independent obligation to determine whether the hours claimed were reasonably expended.

### a. Segregation of Attorney Hours

Wal–Mart correctly argues that the fee-seeking party in Texas generally must segregate the fee request to include only expenses for claims upon which attorney's fees are recoverable. However, an exception exists when claims for which attorney's fees are recoverable and those in which they are not "are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991). Under such circumstances, segregation is not required. *Id., citing, Gill Sav. Ass'n v. Chair King, Inc.,* 783 S.W.2d 674, 680 (Tex.App.—Houston 1989), *modified,* 797 S.W.2d 31 (Tex.1990) (remanding to trial court for determination of attorneys' fees).

Proof of negligence required a showing of fault-based conduct on the part of a Wal–Mart employee. Proof of breach of an implied warranty that Wal–Mart's food was fit for human consumption required only a showing of the foreign, deleterious object in plaintiff's sandwich. This latter fact was not contested, so there is initially a concern with plaintiff counsel's inability to segregate his time.

After fully considering the matter, however, the court concludes that the DTPA and negligence claims were interrelated to such an extent as to excuse segregation. First, plaintiff asserted causes of action based on negligence and breach of implied warranty from the outset. Second, the nature and extent of plaintiff's personal injuries and medical costs caused were strenuously contested. Plaintiff's burden of proof on this issue was the same under each claim. Third, plaintiff's efforts to prove a knowing violation of DTPA and negligence involved proof of essentially the same facts.[10]

### b. Hours Reasonably Expended

The court should always be mindful of its duty to determine whether particular hours claimed are reasonably expended. *Walker v. U.S. Dept. of Housing and Urban Development,* 99 F.3d 761, 768 (5th Cir.1996). In determining whether all hours were reasonably expended on the litigation the record must contain sufficient information for the court to determine whether all of the amounts requested were reasonably expended on the litigation. *Kellstrom,* 50 F.3d at 325, (citing, *Leroy v. City of Houston,* 831 F.2d 576, 585 (5th Cir.1987)); *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("The district court should exclude from this initial fee calculation hours that were not 'reasonably expended.' ").

Although the fee-seeking party bears the burden of submitting evidence supporting the hours worked, absolute specificity, is not required. *Id.* The record need only be sufficiently clear to allow the trial court to make a determination of the reasonableness of expenses. *Kellstrom,* 50 F.3d at 326.

Although the hours needed to prepare for trial often depend on certain uncontrollable

---

**10.** According to plaintiff, Wal–Mart's negligence and "knowing" behavior arose when a delicatessen employee discovered the vegetable dicer was loosing small bits. The employee told her direct supervisor, the delicatessen manager, who did nothing to remedy the problem. The delicatessen manager's inaction, plaintiff asserted, constituted both negligence and knowing conduct.

factors such as opposing party motions, distance and location of witnesses or evidence, or complexity of the legal issues involved, other factors are well within the parties' control. Amended pleadings filed on the eve of long-scheduled jury selection fall within the later category.

■ The court finds that all hours spent on this action before the complaint was amended, i.e., 65.35 hours, and hours spent during actual trial, i.e. 20 hours, were reasonably expended in preparation of this case. However, the court finds that only 25% of the remaining pretrial time spent after amending the complaint was reasonably expended in preparation of this case.

Plaintiff's counsel had adequate time to fully prepare the case prior to the amended complaint. Jury selection and trial were imminent. Indeed, at oral argument on the motion to amend the complaint, plaintiff's counsel argued that the DTPA claim would not increase costs or delay this action because the same operative facts were involved. Plaintiff has not met his burden of showing why substantial further preparation was necessary after the amended pleading. Having failed to establish that these subsequent hours were reasonably expended, the undersigned concludes that 75% of these reported hours should be excluded from the lodestar calculation.[11] Thus, only 14.98 post-amendment, pre-trial hours were reasonably expended.[12]

The court therefore calculates the lodestar in this case at $10,032.50. The lodestar is based on an hourly rate of $100 for 65.35 hours spent prior to the amended complaint, 14.98 pre-trial hours spent after the amended complaint, and 20 hours spent during trial.

## 2. Adjustments to the Lodestar

*Johnson* Factors 4 and 10: Undesirability and Preclusion of Other Employment

■ These factors, respectively, relate to preclusion of other employment due to acceptance of the case and undesirability of the case. Both have peripheral relevance to this case. In the legal community, Wal–Mart is known for its litigation strategy of removing even small, essentially state law tort claims to federal court. Second, Wal–Mart takes a hard line regarding settlement, and rarely offers to settle cases against it.[13]

Counsel contemplating an ordinary personal injury suit against Wal–Mart would reasonably expect to be forced to the more formal and rigorous environment of a federal forum. Further, counsel would reasonably predict that a full trial would be necessary in order to achieve a recovery. Similar actions against a different defendant might be settled routinely without necessity of a formal trial. Thus, this case had a component of undesirability from the outset. Moreover, because a plenary trial likely would be required, counsel would anticipate that more time would be consumed than in an everyday small-stakes personal injury case, thus limiting his ability to accept other more lucrative employment.

These factors unique to suits against Wal–Mart warrant an upward adjustment to the lodestar. The court concludes that 5% is appropriate. This adjustment increases the lodestar amount to $10,534.13.

*Johnson* Factor 8: The Amount Involved and the Result Obtained

■ Plaintiff sought to recover actual damages in the amount of $40,000 plus

---

**11.** Plaintiff's motion indicates he spent 79.9 hours on this action after amending the complaint. Of this, 20 hours were consumed by the trial. This means that counsel devoted 59.9 hours of additional time before trial after the complaint was amended to assert a DTPA claim.

**12.** Total pre-trial hours after the complaint was amended was 59.9. Twenty-five percent of 59.9 is 14.98.

**13.** "If we did nothing wrong, we're not going to settle a case for nuisance value."

Remarks attributed to Ronald Williams, Wal–Mart vice president, explaining the company's willingness to fight aggressively cases that lack merit. *See* Mary Flood, *A Look At the high Court's Term: Few Clear Winner or Losers,* W.S.J. Aug. 19, 1998, at T1, T3.

Although Wal–Mart *did* make settlement offers in the instant case, its hard-line approach nevertheless was manifested. During mediation, Wal–Mart evidently *reduced* its pre-mediation settlement offer for no apparent reason other than to cover its share of the mediator's fee. (Plaintiff's Motion For Sanctions, dockt. No. 19)

DTPA additional damages. The amount awarded by the jury was only 7.5% of the amount sought. The jury award was only about one-third of the DTPA settlement offered before trial. The amount awarded by the jury was little more than offered before mediation months in advance of trial when only common law causes of action were asserted. Ultimately, plaintiff recovered even less than what he contended at trial were his reasonable and necessary past medical expenses. Obviously, the results of trial were very disappointing from plaintiff's perspective.

█ A relatively minuscule damages award bears on the reasonableness of an attorney's fee award. *See Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992) (*citing, Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989) *and Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The Supreme Court noted in *Farrar,*

> Indeed, the "most critical factor" in determining the reasonableness of a fee award is the degree of success obtained. We have already observed that if a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

*Id.* at 114, 113 S.Ct. at 574 (internal quotation and citation omitted). As a result, in some cases, when a plaintiff "prevails" but is awarded a relatively small amount of damages relative to the amount sought, the reasonable attorney's fee should be adjusted accordingly. *Id.* at 115, 113 S.Ct. at 575; *Migis,* 135 F.3d at 1048 (reversing district court where results obtained less than 26½ times amount sought and requested attorney's fees more than 6½ times damages awarded).

There is no precise mathematical formula to apply in this circumstance. If, for example, the court were to cut the lodestar by .90% to achieve an approximate ratio of the amount recovered to that sought at trial, the result would be an obviously inadequate sum

of $1,053.41. Under the circumstances of this case, however, the court cannot justify awarding more in attorney fees than the principal amount obtained for the client as reflected in the jury verdict. Thus, the lodestar will be reduced to $3,000 because of poor results.

Remaining *Johnson* Factors

The court has reviewed all remaining *Johnson* factors and finds no grounds supporting further adjustment of the lodestar. The time and labor required for this litigation provide no basis for adjustment to the lodestar. This case presented no novel or difficult legal questions necessitating lodestar adjustment. The court has no evidence regarding plaintiff's counsel's customary fee, whether contingent or fixed, of time limitations imposed by the client or circumstances, or of the experience, reputation and ability of plaintiff's attorney.

### 3. Summary of Calculation Under Federal Standard

The lodestar of $10,032.50 initially will be adjusted upward by 5% to $10,534.13 to account for the undesirability and extra effort typically required in a suit against Wal–Mart, but then downward to a total of $3,000 to accurately reflect both the amount involved in this litigation and the results obtained. Accordingly, a reasonable and necessary attorney's fee in this action calculated under federal standards is $3,000.

### B. Calculation of Attorney's Fees under Texas Law

█ This is a case in which the settlement-encouraging mechanisms of DTPA are triggered. Clearly, damages tendered in Wal–Mart's pre-trial settlement offer were more than the damages found by the trier of fact. When this finding is made, DTPA § 17.5052(h) declares that the consumer may not recover attorneys' fees greater than the amount of fees tendered in the settlement offer provided, however, that the pre-trial offer was reasonable.

Wal–Mart's pre-trial settlement offer was for $8,000 in damages and an additional $2,500 for attorney's fees. The attorney fee

portion was approximately one-third (31.25%) of the damage offer. This offer was reasonable under the circumstances.[14] Thus, the court concludes that calculation of fees under Texas law would result in an award of $2,500.

### C. Comparison and Award

■ The ultimate award of a reasonable attorney fee is clouded by the uncertainty as to which law governs. It is, in any event, not an exact science. Because the two calculations produce reasonably similar results, the court will split the difference. The attorney fee award will be $2,750.

### D. Prejudgment Interest

■ State law governs pre-judgment interest. *Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 330–31 (5th Cir.1987). Under Texas law, prejudgment interest applicable to this case is 10 percent annually. TEX. FIN. CODE ANN. § 304.003 (1998). Prejudgment interest applies only to unliquidated damages and begins to accrue on the 180th day after the earlier of (1) the date the defendant receives written notice of the claim, or (2) the date suit is filed. *Id.* at § 304.104. *See Fuchs v. Lifetime Doors, Inc.,* 939 F.2d 1275, 1280 (5th Cir.1991) (no prejudgment interest on attorney's fees under Texas law); *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 324 (Tex.1994)(only unliquidated damages subject to prejudgment interest) (*citing, Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554 (Tex.1985)). Prejudgment interest ends on the day preceding the date judgment is rendered.

Exhibit B to plaintiff's motion for judgment establishes that defendant received notice of this action on April 10, 1996. The 180th day thereafter was October 7. Thus, the prejudgment interest period in the case *sub judice* began October 7, 1996. Prejudgment interest now totals $564.98.[15]

14. *See, e.g.,* LOC COURT RULE. Cv 83(A)(1) (limiting maximum contingent fee to 33⅓%).

15. Interest through August 27, 1998, the date before the day judgment is rendered. *See* TEX FIN. CODE ANN § 304.104. Judgment of $3,000 × 10% = $300 per annum = $0.82 *per diem.*

### E. Other Costs and Expenses

Plaintiff also requests judgment for $3,001.85 in other expenses comprised of deposition costs ($510.25), filing and service fees ($218), witness and subpoena fees ($373.60) and expert costs ($1,900), for Dr. John White's appearance at trial.

Wal–Mart does not contest the usual court costs, but contends plaintiff has not shown that the expert witness costs were reasonable and necessary. Plaintiff responds that he has no burden to show that expert fees are reasonable and necessary and that expert fees are properly taxable costs.

■ The award of expert fees, as with all court costs, is determined by federal law. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). Unless statutorily provided or by contractual agreement, recovery of expert witness fees are limited to the statutory amounts authorized under 28 U.S.C. § 1821 and 1920. *Id.* at 437, 439, 107 S.Ct. at 2496 ("[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary."); *United States v. Flintco Et Al,* 143 F.3d 955, 972 (5th Cir.1998) (*citing, International Woodworkers of America v. Champion Intern. Corp.,* 790 F.2d 1174, 1175–76 (5th Cir. 1986) (en banc) *aff'd sub. nom., Crawford Fitting Co., supra.*); *Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir.1994). Section 1821(b) provides that the court may tax witness fees in the amount of $40 per day of testimony. 28 U.S.C. § 1821(b).

■ Plaintiff's expert witness fees properly taxable as costs of court are $40. Dr. White appeared at trial only for one day, on May 4, 1998. As such, the maximum amount reimbursable to plaintiff for Dr. White's testimony is $40. *See* 28 U.S.C. § 1821(b).[16]

October 7, 1996 through August 27, 1998 is 689 days. Thus, 689 days × $0.82 = $564.98.

16. Federal Rule 26(b)(4)(C) authorizes reimbursement for expert expenses incurred in providing discovery responses. FED R. CIV P. 26(b)(4)(C). Plaintiff, however, does not allege that any portion of the $1,900 was incurred in

Inasmuch as plaintiff's reimbursable expert costs are $40, total taxable costs of court are $1,141.85.[17]

### F. Post Judgment Interest

 Federal law governs calculation of interest after a judgment is rendered. 28 U.S.C. § 1961(a) (1994).[18] Post judgment interest in this action is calculated at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last action price for the last auction of fifty-two week United States Treasury bills ("T–Bill Yield") settled immediately prior to the date of judgment. The Director of the Administrative Office of the United States Courts distributes notice of that rate and any changes in it to all Federal Judges. *Id.*

In this case, because the last T–Bill Yield was 5.271%, post judgment interest shall accrue at 5.271 percent per annum. *See* 28 U.S.C. § 1961(a). Damages ($3,000), attorney's fees ($2,750), costs of court ($1,141.85) and prejudgment interest ($564.89) total $7,456.83, or the amount of the judgment. Therefore, interest shall accrue on the judgment at $1.08 *per diem* until paid. *Id.*[19]

### G. Appellate Fees

Finally, plaintiff requests a conditional award of additional attorney's fees for appeal. Both parties are in agreement that attorney's fees for appeal should be awarded only in the event of an appeal.

Inasmuch as Wal–Mart does not object to the amounts requested for appeal, plaintiff is conditionally awarded the following fees for appeal, if any:

(1) $3,000 should this case be appealed to the Fifth Circuit Court of Appeals;

(2) $2,000 should this case be appealed to the United States Supreme Court and *writ of certiorari* is not granted; and an additional

(3) $3,500 should the United States Supreme Court grant plaintiff's *writ of certiorari.*

Thus, plaintiff is conditionally awarded a total of $8,500 in attorney's fees for appeal.

### CONCLUSION

Plaintiff's aggregate judgment of $7,456.83, entered simultaneously with this opinion, will include $3,000 for damages determined by the jury, prejudgment interest of $564.98, attorney's fee of $2,750, and court costs of $1,141.85. Post judgment interest shall accrue at $1.08 *per diem* until paid.

The judgment will include a conditional award of appellate fees totaling $8,500 as specifically outlined in Section IV. G above.

response to Wal–Mart discovery requests. As such, Rule 26(b)(4)(C) provides no basis for an award of expert fees. *Id.*

17. Taxable costs= $510.25 (deposition) + $218 (filing & service) + $373.60 (lay witness & subpoenas) + $40 (expert witness) = $1,141.85.

18. Without citing authority, plaintiff's counsel contends post judgment interest accrues at 10 percent *per annum.* The court presumes counsel mistakenly believes state law governs post judgment interest accrual.

19. Judgment amount of $7,456.83 × 5.271% = $393.05, per annum. Per day, this amount = $1.08.